FRANCISCAN SISTERS OF THE IMMACULATE CONCEPTION OF THE ORDER OF ST. FRANCIS, Plaintiff-Appellant, *v.* THE DEPARTMENT OF PUBLIC AID, Defendant-Appellee.

(No. 71-111; ▮▮▮▮▮▮)

Third District—January 31, 1972.

James J. Gende, of Moline, for appellant.

H. R. Tavins, Assistant Attorney General, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff-Appellant, Franciscan Sisters of the Immaculate Conception of the Order of St. Francis, an Illinois corporation, a/k/a St. Anthony's Hospital, brought this action in the Circuit Court of Rock Island County against the Illinois Department of Public Aid, Defendant-Appellee, seeking to recover for hospital services supplied Charles Hamerlinck. Defendant moved to dismiss the complaint alleging the State could not be made a party to the action and that the issue had been finally determined in a prior administrative procedure. The trial court dismissed the complaint and it is from such judgment that this appeal follows.

The relevant facts are undisputed. On September 10, 1969, Charles Hamerlinck, 63 years of age, became a patient at St. Anthony's Hospital and was not discharged until February 2, 1970. The total charge for Hamerlinck's care provided by the hospital was $9,231.50, of which amount $3,420.94 was paid by the patient's health insurance and by patient personally. During his stay in the hospital on November 10, 1969, Hamerlinck applied for financial aid through the Rock Island County office of the Illinois Public Aid Department. The application was filed with the assistance of the attorney for St. Anthony's Hospital. At the time of his hospitalization the patient was not receiving a grant or other financial assistance from the Department, the patient apparently having some income sufficient to meet his normal needs. His application was filed as a medically indigent person. The local office made several determinations or findings relevant to the application but the only one pertinent to this controversy was the finding that the patient possessed excess assets in the amount of $3,226. The patient appealed the determination of the county office, again with the assistance of the attorney for St. Anthony's Hospital. After hearing, the Department concurred in the determination that the patient did possess excess assets and entered its order on Septem-

ber 11, 1970 to that effect. No appeal from or further review of such determination was sought by Hamerlinck or St. Anthony's Hospital.

On December 2, 1970, plaintiff commenced this suit alleging the foregoing facts and additionally alleged that the patient Hamerlinck refused to prosecute any further review of the Department's determination, that such determination was contrary to the facts and law and that the plaintiff brought the action pursuant to Article 11, Section 11—13, Chap. 23, Ill. Rev. Stat. 1969.

Pursuant to the motion the trial court dismissed the complaint holding that the administrative determination constituted a final and binding determination of the issues precluding further litigation.

This case involves primarily the application and construction of Article 11—13, Chap. 23, Ill. Rev. Stat. 1969 which provides, "Conditions for Receipt of Vendor Payments—Limitation Period for Vendor Action— Penalty For Violation—

A vendor payment, as defined in Section 2—5 of Article 11, shall constitute payment in full for the goods or services covered thereby. Acceptance of the payment by or in behalf of the vendor shall bar him from obtaining, or attempting to obtain, additional payment therefor from the receipient or any other person. A vendor payment shall not, however, bar recovery of the value of goods and services the obligation for which, under the rules and regulations of the Illinois Department, is to be met from the income and resources available to the recipient, and in respect to which the vendor payment of the Illinois Department or the local governmental unit represents supplementation of such available income and resources.

Vendors seeking to enforce obligations of a governmental unit or the Illinois Department for goods or services (1) furnished to or in behalf of recipients and (2) subject to a vendor payment as defined in Section 2—5, shall commence their actions in the appropriate Circuit Court or the Court of Claims, as the case may require, within one year next after the cause of action accrued. A cause of action does not accrue within the meaning of this paragraph for as long as there is an unrevoked acknowledgment in writing by a governmental unit or the Illinois Department that it accepts the liability, in whole or in part, for a vendor claim submitted to it or, if the vendor claim or any part thereof is not so acknowledged, until the vendor has been notified in writing that the claim or part thereof is disallowed or disapproved; however, a vendor who determines that any part or all of his claim will not be paid may notify the governmental unit or the Illinois Department that his cause of action on that claim has accrued, in which case the vendor shall institute his action within one year after such notification. In re-

spect to any cause of action which accrued prior to the effective date of this amendatory Act of 1969, the one year limitation period shall be applicable if the cause of action has not, as of that date, been barred by the statute of limitations in force prior thereto, but in all such cases the vendors shall have one year after that effective date to commence their actions. This paragraph governs only vendor payments as defined in this Code and as limited by regulations of the Illinois Department; it does not apply to goods or services purchased or contracted for by a recipient under circumstances in which the payment is to be made directly by the recipient.

Any vendor who accepts a vendor payment and who knowingly obtains or attempts to obtain additional payment for the goods or services covered by the vendor payment from the recipient or any other person shall be fined not less than $50 nor more than $500, or be imprisoned for not more than 6 months, or both." The italicized (underlined) portion of the Section was added by the legislature in 1969. No claim is made that this section prior to its amendment authorized any action by a vendor.

It is undisputed that plaintiff is a vendor as the term is used in the statute. However defendant argues that the statute does not authorize an action against the Department in the circuit court and that in any event the action is barred by the prior final administrative determination.

It is our conclusion that the statute does not authorize any action in the circuit court against the Illinois Public Aid Department. Consistent with the doctrine of sovereign immunity we believe that whatever action is contemplated by 11-13 should have been filed with the Court of Claims and not in the circuit court.

First of all the language of the amendment itself should be noted. The essential portion of 11-13 is, "* * * vendors seeking to enforce obligations of a governmental unit or the Illinois Department for goods or services * * * shall commence their actions in the appropriate Circuit Court or the Court of Claims, as the case may require * * *." Such language does not provide for an unconditional or free choice of forums but on the contrary indicates that the propriety of the forum depends on other unspecified considerations. The principal limiting considerations are the nature of the obligations with respect to which enforcement is provided. The enforcement of an obligation of a "governmental unit" is appropriate in the circuit court and only appropriate in such court, there being no theory under which the enforcement of such an obligation is appropriately sought in the Court of Claims. The obligation of the State Department is appropriately commenced in the Court of Claims and said forum is the only appropriate forum unless there is a clear indication to the contrary. No such contrary indication appears in the statute.

Our conclusion that the appropriate forum depends upon the distinction between a governmental unit and the State Department is buttressed by other articles of the Public Aid Code recognizing the distinctive function and character of each. Articles 3, 4 and 5 concern financial aid programs administered by the State Department and its county offices. Articles 6 and 7 concern financial assistance programs initially the responsibility of diverse local governmental units. As described in Section 11—8 of Article 11, different modes and different bodies are specified with respect to review of initial determinations depending on whether the claim was filed under Articles 3, 4 and 5 or Articles 6 and 7. Section 11—8.7 of Article 11, provides for judicial review of final determinations by the State Department concerning claims under Articles 3, 4 and 5 but mentions no judicial review of determinations by local governmental units.

We hold that the section does not intend to depart from the usual and customary procedures in which claims against the State are enforced in the Court of Claims. In view of our decision that the claim was not properly brought in the circuit court we find it unnecessary to determine whether the plaintiff was or was not a party to the final administrative proceeding or whether in any event such administrative determination upon becoming final barred a collateral and independent legal action.

For the foregoing reasons the judgment of the Circuit Court of Rock Island County is affirmed.

Judgment affirmed.

ALLOY and DIXON, JJ., concur.