Lacy Oliver, Plaintiff-Appellee, v. Civil Service Commission of the City of Chicago, Arthur J. Ward, Superintendent of the House of Correction of the City of Chicago, and the City of Chicago, a Municipal Corporation, Defendants-Appellants.

Gen. No. 50,863.

First District, Third Division.

March 2, 1967.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellants.

Richard L. Clayter, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Cook County vacating and setting aside a decision of the Civil Service Commission of the City of Chicago. On May 8, 1963, the Commission found the plaintiff guilty of conduct unbecoming an employee of the City of Chicago and ordered that he be discharged from his position as a guard at the House of Correction. Oliver filed a "Petition to Correct Order" with the Commission, which was denied on September 4, 1963. Thereafter he instituted an action for administrative review. The Circuit Court heard the case and ordered plaintiff's reinstatement. The Commission appeals from this order, contending that (1) the trial court had no jurisdiction to review the decision of the Commission because the action for administrative review was not filed within the time allotted by the Administrative Review Act, and (2) the Commission properly discharged plaintiff for conduct unbecoming an employee. The events precipitating his discharge follow.

On December 9, 1962, at about 2:00 a. m. plaintiff was in the Green Diamond Lounge in Chicago when police officers arrived to investigate a report that an armed man was in the vicinity. Plaintiff volunteered to assist the officers, exhibited his badge and, according to one of the policemen, identified himself as a police officer. He told the officers that a small man on crutches had dropped a toy pistol in the tavern; that he had cautioned the man about frightening people; and that he had as-

sisted in chasing the man from the tavern. After relating the story to the officers, plaintiff turned to the patrons of the tavern and shouted, "Everybody out." Plaintiff then accompanied the police as they searched the area for the small man with the toy pistol. A crowd gathered and the police tried to disperse it. They also suggested to plaintiff that he should go home. Plaintiff did not comply with their request, so the officers arrested him for disorderly conduct. A search revealed that he was carrying a 38-caliber revolver, and in addition to the disorderly conduct charge he was charged with impersonating a police officer and unlawful use of weapons. Plaintiff was tried on February 15, 1963, and found not guilty on the foregoing charges.

Following plaintiff's arrest, his superior at the House of Correction filed charges and specifications with the Commission, asking that plaintiff be discharged (1) for conduct unbecoming an employee, (2) disobedience of orders, and (3) violation of law. On motion of the Commission the charges were later reduced to disobedience of orders.

The evidence produced at the hearing before the Commission established that the rules of the House of Correction prohibited guards and custodial employees from carrying firearms, except when authorized to do so on official business.[1]

---

[1] The rules and regulations of the House of Correction provide as follows:

"FIREARMS.

"All guards and custodial employees are prohibited in carrying firearms about their person, except when authorized to do so on official business only. Any infraction of this rule will be considered sufficient cause for immediate dismissal."

In April 1961 the following directive letter was posted on the bulletin boards:

"To all Security Personnel:

"It has been called to my attention that certain Security Personnel are carrying side arms to and from the institution.

On May 8, 1963, the Commission found plaintiff guilty of the charges preferred against him and ordered his discharge. Two paragraphs of the Commission's order related to the charges of disorderly conduct and violation of law, charges which had been stricken during the hearing. Upon noting this error plaintiff's attorney filed his petition to correct the order and did not initiate a suit for administrative review until the petition was denied by the Commission. In order to resolve the issues presented on this appeal, we must first determine when the official proceedings of the Commission were terminated, since an action for administrative review must be commenced within 35 days of the rendition of the final decision of the administrative agency.[2]

■■ Judicial review of an administrative decision may not be had until the aggrieved party has exhausted his administrative remedies. The Administrative Review Act provides that if an agency provides a method for rehearing a case, either by an agency rule or by a statutory provision, then an agency decision is not an appealable "administrative decision" until the aggrieved party requests rehearing and his petition is denied. The statute further provides that in the event an agency does not have a provision for rehearing, the final order becomes ripe for review when it is rendered by the

---

"This practice must cease immediately as no one is authorized to carry any guns of any kind. Carrying a gun is a violation, not only of institutional regulations but also of city and state statutes. Anyone apprehended carrying a gun will be prosecuted to the fullest extent of the law."

[2] Judicial review of the decisions of municipal civil service commissions is governed by the Administrative Review Act. Ill Rev Stats, c 24, § 10–1–45 (1965). An action for judicial review of an "administrative decision" must be commenced within 35 days of the rendition of the decision or else it will be barred. Ill Rev Stats, c 110, §§ 265, 267 (1965). It is therefore crucial to determine whether the Commission terminated its official proceedings on May 8, 1963, when the order was entered, or on September 4, 1963, when it denied the petition to correct its order.

agency.[3] The parties to this suit stipulated that the Commission does not have any rule or regulation providing a means for the rehearing of its decisions and therefore under the applicable provisions of the Administrative Review Act the order of May 8, 1963, was an "administrative decision," and the period for review began to run as of that date.

■■■ Plaintiff argues that the Commission has the inherent power to correct its orders, just as courts have continuing jurisdiction over their own decrees. On this basis he contends that the Commission could correct its order even though there was no specific provision in the rules or in the ordinance for rehearing. The law is clear however that regulatory agencies have no inherent powers. They are creatures of statute, vested only with those powers specifically conferred upon them by the legislature and accordingly they may modify their decisions only where authorized to do so by statute. Pearce Hospital v. Public Aid Commission, 15 Ill2d 301, 154 NE2d 691.

■■ Plaintiff also contends that the Commission should be estopped from interposing the statute of limitations as a defense to this action because the Commission accepted the petition and entertained it until the

---

[3] Section 1 of the Administrative Review Act, as in force throughout 1963, L 191, pp 1911–1913, Ill Rev Stats, c 110, § 264 (1961) provided that:

" 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of the parties and which terminates the proceedings before the administrative agency. In all cases in which a statute or rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time . . . , and an application for such rehearing or review is made, no administrative decision of such agency shall be final as to the party applying therefor until such rehearing or review is had or denied."

35-day period had run and then acted on it by denying the relief sought. Plaintiff asserts that the conduct of the Commission was inconsistent with the theory that it could not rehear the case and that since the Commission induced plaintiff to refrain from commencing his action for judicial review, it may not be allowed to raise the statute of limitations as a defense. This theory however is not supported by the facts. The Commission did not request the plaintiff to file his petition nor did its rules indicate that such a petition would be entertained. Plaintiff's actions were unilateral and unsolicited and we cannot impose an affirmative duty upon the Commission to correct such errors.

██ We proceed to a consideration of the merits of the order discharging plaintiff from his position as a guard. In so doing we do not purport to reweigh the evidence. It has been repeatedly held that the function of courts reviewing orders of administrative agencies is to consider the record and determine whether the findings and decisions of the agencies are against the manifest weight of the evidence. Taylor v. Civil Service Commission, 33 Ill App2d 48, 178 NE2d 200. The court can only review the nature of the offense and the penalty for the purpose of determining whether the offense was related to the service and whether the ruling was arbitrary or capricious. Nolting v. Civil Service Commission, 7 Ill App2d 147, 129 NE2d 236.

██ It is apparent that security employees such as guards at the House of Correction must be emotionally stable. It is also clear that such employees may be prevented from carrying weapons on their person for fear that such weapons will fall into the hands of inmates. These guards were provided with badges and given a certain degree of authority and therefore the Chief of Security has the duty to make certain that the guards do not misrepresent their authority or use their badges as means of securing special privileges.

The rules imposed by the House of Correction were directly related to the service and there is ample evidence that plaintiff violated those rules. The order of the trial court vacating and setting aside the order of the Civil Service Commission is reversed.

Order reversed.

SULLIVAN, P. J. and DEMPSEY, J., concur.